IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUELINE BULBOFF<br>    *Plaintiff*, | : | |
| | : | CIVIL ACTION<br>NO. 18-4532 |
| v. | : | |
| HOSPITAL OF THE UNIVERSITY OF<br>PENNSYLVANIA<br>    *Defendant*. | : | |

**MEMORANDUM**

**Jones, II   J.**                                                                                              **May 17, 2019**

## I.   INTRODUCTION

Plaintiff Jacqueline Bulboff commenced this action against Defendant Hospital of the University of Pennsylvania, alleging various violations of both state and federal law in connection with her termination from employment with Defendant. Defendant filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of Counts I, IV and V of the Complaint.[1] For the reasons set forth below, Defendant's Motion to Dismiss Count IV shall be granted and the court shall decline to exercise supplemental jurisdiction over the remaining state law claims.

---

[1] Counts I, IV and V set forth the following claims, respectively: (1) violation of the Pennsylvania Whistleblower Act, 43 P.S. §§ 1422 *et seq*.; (2) violation of the Patient Safety and Quality Improvement Act, 42 U.S.C. §§299b-21 *et seq*.; and, (3) tortious interference with prospective business relations.

## II. FACTUAL BACKGROUND

Plaintiff began her employment with Defendant on July 17, 2016. (Compl. ¶¶ 10–15.) On April 23, 2018, Plaintiff alleges she discovered various medical errors made in the treatment of a woman, whom she refers to as "K.L"—a Medicare/Medicaid patient in Defendant's Hematology-Oncology Department. (Compl. ¶ 17.) Plaintiff alleges that upon beginning her shift that day, she noticed that Erin Teeter—the nurse assigned to K.L. during the prior shift—failed to draw K.L.'s blood or administer several of K.L.'s scheduled medications. (Compl. ¶¶ 20, 24, 27.) After confronting Teeter, who maintained that she did indeed administer the medications, Plaintiff alleges she discovered all of the medications that were to be administered, unopened in K.L.'s room. (Compl. ¶ 36.)

Plaintiff avers that she then notified the physician on duty that K.L. had not received her scheduled medications, prompting the physician to order new medications. (Compl. ¶ 43.) For Teeter's alleged mistakes, Plaintiff made a formal complaint through Defendant's "Safety Net" program—an internal mechanism for hospital staff to make reports of potential mistakes that they have witnessed in patient care. (Compl. ¶¶ 46–47; *see also* ECF No. 4-1 at 10.) Plaintiff was eventually terminated from her employment on June 4, 2018 and claims her termination was in retaliation for having submitted a formal complaint regarding K.L.'s care through Safety Net. (Compl. ¶¶ 92–94.)

## III. STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion, courts must "evaluate[] the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law." *Hedges v. United*

*States*, 404 F.3d 744, 750 (3d Cir. 2005) (quoting *Gould Elec. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler*, 578 F.3d at 210 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## IV. DISCUSSION

### A. Patient Safety and Quality Improvement Act, 42 U.S.C. §§ 299b, *et seq*.

In Count IV of her Complaint, Plaintiff alleges a federal claim under the Patient Safety and Quality Improvement Act ("PSQIA"). The PSQIA prohibits "adverse employment actions" against an employee who submits a report if "the individual in good faith reported information— (A) to the provider with the intention of having the information reported to a patient safety organization; or (B) directly to a patient safety organization." 42 U.S.C. § 299b–22(e)(1)(A)–(B). A patient safety organization (PSO) is a federally certified private or public entity tasked with the mission "to conduct activities that are to improve patient safety and the quality of health care delivery." 42 U.S.C. §§ 299b-21(4), 299b-24(a), 299b-24(b)(1)(A). The Act further provides that an individual who suffers an adverse employment action as a result of his or her good faith report may bring a civil action "to enjoin any act or practice that violates subsection (e) . . . and to obtain other appropriate equitable relief (including reinstatement, back pay, and restoration of benefits) to redress such violation." 42 U.S.C. § 299b–22(f)(4)(A).

Plaintiff alleges Defendant's Safety Net program is a qualifying PSO and that she was therefore protected under the PSQIA when she reported Teeter's alleged medical errors. (Compl. ¶¶ 127–31.) A PSO is a private or public entity which must be federally certified by the Secretary of Health and Human Services. *See* 42 U.S.C. § 299b-21(4). The Secretary delegates the function of certification to the Agency for Healthcare Research and Quality. 42 C.F.R. § 3.112. All PSOs must meet and maintain certain criteria to become and remain listed as a certified PSO in the Secretary's database. 42 U.S.C. § 299b-24.

Defendant's Safety Net program is not a PSO under the PSQIA. Defendant's Safety Net program has not been federally certified as a PSO, nor has it been listed as a PSO by the Agency for Healthcare Research and Quality.[2] Thus, Plaintiff's report through Safety Net does not implicate the PSQIA.

In her Response to the instant Motion, Plaintiff contends she "has alleged sufficient facts to indicate that she reported the medical error with the intent that it be reported or forwarded on to a patient safety organization" and that "the facts support the inference that Plaintiff's intent was to comply with and utilize the state and federal reporting mechanisms, including to the applicable patient safety organization." (Resp. Mot. Dismiss 14.) *See also* 42 U.S.C. § 299b–22(e)(1)(A) (extending protections from retaliation when reports are made "to [a] provider with the intention of having the information reported to a [PSO]").

---

[2] The Agency for Healthcare Research and Quality maintains an online listing of approved PSOs. This Court takes judicial notice that Defendant's Safety Net program is not listed as a certified PSO by the Agency for Healthcare Research and Quality. *See Alphabetical Directory of Listed Patient Safety Organizations*, AGENCY FOR HEALTHCARE RESEARCH AND QUALITY, https://www.pso.ahrq.gov/pso-list (last visited April 17, 2019); *see also McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (permitting courts to review matters of public record in considering motions to dismiss).

Contrary to Plaintiff's assertion, Safety Net is simply not a federally certified PSO under the PSQIA. Moreover, a plain reading of Plaintiff's Complaint clearly demonstrates that the inferences she asks this Court to make are not reasonable. Plaintiff's Complaint alleges she notified the on-duty physician that K.L. had not been given her medication as prescribed, which prompted new medications to be ordered. (Compl. ¶ 43.) Nowhere in Plaintiff's Complaint is there any indication that she intended the alleged medical error to be reported to a federally certified PSO. In fact, Plaintiff's Complaint specifically alleges that she reported the incident on Safety Net so that management would address the issue with Teeter. (Compl. ¶ 49.) Indeed, any purported intention to have the incident reported to a PSO has only now been expressed in response to the instant Motion. Plaintiff pleads no such intention, nor do any facts set forth in her Complaint give rise to an inference of the same. To the contrary, the reasonable inferences that can be drawn from the pleadings are that: (1) Plaintiff reported the medication errors to the physician to address the immediate task at hand—properly administering K.L.'s scheduled medications; and, (2) Plaintiff reported the incident through Safety Net so that the hospital would confront Teeter regarding her actions. Thus, Plaintiff fails to state a claim under the PSQIA.

**B. Amendment**

As an alternative to dismissal, Plaintiff seeks leave to amend. Amendments to a Complaint may be made as a matter of course, but only if the amendment occurs within: "21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).

Inasmuch as the conditions for amendment as a matter of course are absent here, amendment is only permitted by leave of court or with the written consent of the opposing party.

5

Fed. R. Civ. P. 15(a)(2). Leave must be freely granted "when justice so requires." *Id.* However, leave may be denied where undue delay, bad faith, dilatory motive, prejudice, or futility are present. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In examining futility, the legal standards of Rule 12(b)(6) must be applied. *Id.*

This Court declines to permit Plaintiff the opportunity to amend because based upon the facts set forth in her original Complaint, amendment would be futile. Plaintiff cannot now attempt to satisfy PSQIA requirements with completely different facts that, if true, would have appeared in her Complaint at the onset. Accordingly, Count IV is dismissed with prejudice and without leave to amend. *See Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (permitting courts to deny leave to amend when such amendment would be futile).

### C. Supplemental Jurisdiction

The remainder of Plaintiff's Complaint contains state law claims under Pennsylvania's Whistleblower Law (Count I) and Medical Care Availability and Reduction of Error Act (Count II), as well as a common law claim for Wrongful Discharge (Count III).

The criteria for assessing whether or not a court should exercise supplemental jurisdiction is clear:

> The district courts may decline to exercise supplemental jurisdiction over a claim. . . . if-- (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. 1367(c).

The Third Circuit has directed that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties

6

provide an affirmative justification for doing so." *Ashton v. City of Uniontown*, 459 F. App'x 185, 191 (3d Cir. 2012) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

In this case, the one federal claim over which this Court had original jurisdiction is being dismissed with prejudice. Moreover, there exist no concerns of judicial economy, convenience, or fairness that would justify this Court's exercise of jurisdiction over the remaining state law claims. Accordingly, this Court declines to exercise supplemental jurisdiction over same, thereby negating the need for a merits assessment of same.

## V. CONCLUSION

For the reasons set forth hereinabove, Defendant's Motion to Dismiss Count IV of Plaintiff's Complaint shall be granted. Defendant's Motion to Dismiss Counts I and V of Plaintiff's Complaint is denied as moot, as this Court declines to exercise supplemental jurisdiction over said claims.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II     J.